**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**BOSTON DIVISION**

-------------------------------------------------------------------X

ALAN JOSEPH BAUER, Ph.D., *et al.*,

                                                        Case No: 24-cv-10404

                Plaintiffs,

           -against-

PRESIDENT AND FELLOWS OF HARVARD
COLLEGE (HARVARD CORPORATION), *et al.*

                Defendants.

-------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS THE AMENDED**
**COMPLAINT**

**PRELIMINARY STATEMENT**

      Plaintiffs, a group of Harvard alumni, brought this action against Harvard Corporation

and The Board of Overseers (collectively, "Defendants" or "Harvard")[1] for its systemic failure

to combat antisemitism on campus. The Amended Complaint details discrimination and

harassment against Jewish students, asserting Harvard has not only failed to address these

issues but has also fostered an environment where such egregious behaviors can thrive.

---

[1] Defendants contend The Board of Overseers is not a proper defendant because it is not a corporate entity independent of President and Fellows of Harvard College. (Dkt. 26, n.1). Yet the Harvard Faculty of Medicine handbook says: "The University has two governing boards. The President and Fellows of Harvard College, often called the Harvard Corporation, is the University's principal fiduciary governing board. The Board of Overseers is the larger of the two boards." https://facultyhandbook.hms.harvard.edu/2bylaws-gov/hvrd-univ-gov/ (last visited 8/11/24) Since Harvard has two boards, both can be named as defendants. *See Lanier v. President and Fellows of Harvard College*, 490 Mass. 37 (Jun 23, 2022) (Board of Overseers and President and Fellows of Harvard College named as defendants).

Contrary to Defendants' assertions in their Motion to Dismiss (Dkt. 25, 26), Plaintiffs have standing as alumni whose degrees and reputations have been harmed by Harvard's actions and inactions. Plaintiffs adequately allege breaches of implied contractual obligations, fraud and misrepresentation, unjust enrichment, and breach of fiduciary duty, all within the statutes of limitations. Plaintiffs' Amended Complaint (Dkt. 23) contains detailed factual allegations that, if proven, would establish Harvard's liability for its failure to address antisemitism and the resulting damages. The legal theories are well founded and supported by case law. Therefore, Defendants' Motion to Dismiss should be denied.

## SUMMARY OF FACTS

Over the past 60 years, Harvard has sought to rehabilitate itself from the tarnish of its early 20th century antisemitic admission policies by instituting various policies promoting the slogans tolerance, diversity, equity, and inclusion. Harvard's current diversity statement, like those extant when Plaintiffs were enrolled, emphasizes creating a culture of belonging and respect for individual differences, and its Gift Policy Guide ("Gift Policy") underscores its commitment to respecting the rights, differences, and dignity of individuals as well as using every contribution to preserve its excellence.

Plaintiffs attended Harvard expecting it to uphold its reputation for excellence by adhering to these standards. Despite its stated commitments and efforts to shed its early 20th century antisemitic image, Harvard has tolerated and enabled antisemitism to fester. Over several years, and particularly in recent months, Harvard has failed to address, prevent, and rectify antisemitism, hate, and discrimination on campus.

Following the October 7 attacks by Hamas terrorists on Israel, overt antisemitism at Harvard surged. Pro-Hamas disruption of campus life escalated from protests to harassment and violence targeting Jewish students. Antisemitism at Harvard reached unprecedented levels, with Jewish students facing genocidal chants, assaults, rallies, encampments, slogans, threats,

and a virulently hostile campus environment every bit as menacing as mobs of Klansmen burning crosses—causing some to avoid campus. Faculty and student organizations also promoted antisemitism through courses and guest speakers.

Despite the escalation of overt antisemitism, Harvard has failed to take sufficient action to protect Jewish students and enforce its policies. Pro-Hamas rallies with genocidal chants and harassment of Jewish students have been permitted, and antisemitic propaganda by faculty has been ignored. *See Kestenbaum v. President & Fellows of Harvard Coll.*, No. 24-10092-RGS, 2024 U.S. Dist. LEXIS 139180, 2024 WL 3658793 (D. Mass. Aug. 6, 2024) (denying motion to dismiss in action by student and student association against Harvard for failure to control campus antisemitism).

Harvard's inaction has led to significant reputational damage, causing businesses and donors to sever ties with and publicly criticize Harvard. Various employers announced they would no longer hire Harvard graduates. Major donors announced they would withhold donations. The post-October 7 environment disrupted education and operations, undermining Harvard's stated missions of inclusivity and excellence, and thereby causing significant reputational damage to those with Harvard degrees.

## STANDARD OF REVIEW

When a defendant challenges standing with an "immediate" Rule 12(b)(1) motion, courts apply Fed. R. Civ. P. 12(b)(6)'s standard, requiring plaintiffs to "plausibly plead" standing. *Van Wagner Boston, LLC v. Davey,* 770 F.3d 33 (1st Cir. 2014) (noting "low bar" to allege standing). On a standing challenge, the complaint is construed liberally, treating jurisdictional allegations as true and drawing all reasonable inferences in Plaintiff's favor. *Marradi v. K&W Realty Inv. LLC,* 212 F. Supp. 3d 239, 242 (D. Mass. 2016). Under Rule 12(b)(6), a complaint must be dismissed only if it fails to allege enough facts to state a claim to relief that is plausible on its face. *Upshaw v. United States,* No. 14-569 C, 2014 U.S. Claims

LEXIS 1281 (Fed. Cl. 2014). Here, Plaintiffs have provided sufficient factual allegations to state a plausible claim for relief and that give rise to a reasonable inference of liability. *Brickey v. United States,* No. 14-728 C, 2015 U.S. Claims LEXIS 1001 (Fed. Cl. 2015)

Defendants also argue the Amended Complaint fails to meet the heightened pleading requirements for fraud under Fed. R. Civ. P. 9(b). However, Plaintiffs have stated with particularity the circumstances constituting fraud, including the time, place, and content of the alleged false representations, and have provided specific facts showing Defendants knew their statements were false.

## ARGUMENT

### I.      Plaintiffs' Status as Harvard Alumni Gives Them Standing to Pursue the Claims

Standing is a threshold jurisdictional issue implicating Article III of the Constitution. To establish standing, a plaintiff must demonstrate three elements: (1) an injury in fact that is concrete and particularized and actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) redressability by a favorable decision. *Walters v. Fast AC, LLC*, 60 F.4th 642 (11th Cir. 2023).

To satisfy the injury-in-fact requirement, a plaintiff must show an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. Plaintiffs allege an injury-in-fact: that Harvard's failure to address and prevent antisemitism has significantly diminished the value of their Harvard degrees. "General factual allegations of injury resulting from the defendant's conduct" are enough to overcome a motion to dismiss. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When considering a motion to dismiss, the court "presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889 (1990)). Plaintiffs' injuries are concrete and particularized, directly affecting their professional

and reputational standing. Plaintiffs also allege Harvard misrepresented its diversity, equity, and inclusion policies and Gift Policy, leading them to believe Harvard guaranteed that it intended to maintain Harvard as an institution of excellence and inclusion for all groups, including Jews. Had Plaintiffs known Harvard's commitment to that ideal was insincere, perfunctory, and superficial, such that the Harvard administration would look the other way while Harvard became a hotbed of vitriolic antisemitism, undermining its excellence, they would not have attended Harvard, paid the expensive Ivy League tuition, or donated to Harvard. Furthermore, Plaintiffs, who are Jewish, have been emotionally distressed by the misuse of their donations, which were intended to support an inclusive environment. Viewing all inferences favorably to Plaintiffs, these financial and emotional injuries are sufficiently concrete to confer proper standing.

The causation element requires that the injury be fairly traceable to the defendant's conduct. *Walters v. Fast AC, LLC*, 60 F.4th 642 (11th Cir. 2023). There is a direct causal connection between the injury suffered by Plaintiffs and Harvard's conduct. Harvard's failure to address antisemitism has directly diminished the value of a Harvard degree. Furthermore, Harvard's misrepresentation of its diversity, equity, and inclusion policies and Gift Policy, leading Plaintiffs to believe that Jewish students would be included and protected, directly caused Plaintiffs to make decisions resulting in financial and emotional harm.

For an injury to be redressable, it must be likely, not merely speculative, that it will be redressed by a favorable decision. *Alta Wind I Owner Lessor C v. United States,* 150 Fed. Cl. 152 (2020). Plaintiffs seek injunctive relief to compel Harvard to alter its antisemitic practices and ensure an inclusive environment, rehabilitating the value of their degrees lost to Harvard's malfeasance. Plaintiffs also seek monetary damages for the financial costs associated with attending Harvard, their donations, and their reputational damage. These forms of relief would redress the harm suffered by Plaintiffs.

Defendants cite cases from other jurisdictions, and therefore not binding on this Court, where alumni lacked standing to challenge their alma mater's decisions that are distinguishable from the Plaintiffs' claims, primarily because the Plaintiffs' claims involve specific allegations of breach of contract and fraud, along with a concrete interest, which are not present in the cited cases. In *Leach v. Nichol*, 2007 U.S. Dist. LEXIS 38763 (E.D. Va. May 29, 2007), the alumnus lacked standing because his emotional upset did not constitute an invasion of a legally protected interest. Similarly, in *Mercer Univ. v. Smith*, 371 S.E.2d 858 (Ga. September 22, 1988) the alumni lacked standing to challenge the merger of their college because they did not have a concrete interest in the university's administrative practices. The same reasoning was applied in *Tishok v. Dep't. of Educ.*, 133 A.3d 118 (Pa. Commw. Ct. February 4, 2016), where the alumni lacked standing to challenge coeducation. In *Russell v. Yale Univ.*, 54 Conn. App. 573 (August 24, 1999) the alumni lacked standing to challenge the reorganization of the divinity school because they did not have a direct interest. In *Steeneck v. Univ. of Bridgeport*, 235 Conn. 572 (Conn. Dec 19, 1995), the alumni lacked standing to challenge the university's loan agreement due to the absence of a direct, personal, and legal interest.

Conversely, Plaintiffs allege they would not have attended or donated to Harvard had they known its purported commitment to inclusiveness was insincere and that it would tolerate a degree of antisemitism that would devalue their degrees and cause them emotional harm. Defendants' conduct directly impacts Plaintiffs financially and emotionally, unlike the generalized grievances in the cited cases. Plaintiffs' claims of contract breach, fraud, unjust enrichment, and breach of fiduciary duty provide a direct, personal, and legal interest for standing.

## II.      Plaintiffs' Status as Prior Donors to Harvard Creates Standing

Defendants argue the Amended Complaint lacks specific information regarding the dates, amounts, or circumstances of the alleged donations. However, Plaintiffs contend that

their allegations, as currently stated, are sufficient to survive a motion to dismiss under Massachusetts law. The court will consider all factual allegations as true and draw inferences in favor of the plaintiff when reviewing a motion to dismiss for failure to state a claim. *Gen. Convention of the New Jerusalem in the United States of Am., Inc. v MacKenzie,* 449 Mass. 832 (2007). The current allegations include Plaintiffs' status as donors and the misuse of their donations. The court should accept Plaintiffs' allegations regarding their donor status as true and draw all inferences in favor of the Plaintiffs for the purpose of this motion.

Defendants further argue that under Massachusetts law, only the Attorney General has standing to bring actions to correct abuses in the administration of a public charity. However, Massachusetts courts have acknowledged that a private plaintiff may have standing to make claims against a public charity if the plaintiff asserts interests in the organization distinct from those of the general public. The claim must arise from a personal right directly affecting the individual member. *Weaver v. Wood,* 425 Mass. 270 (1997). This exception is elaborated in *Maffei v. Roman Cath. Archbishop of Boston*, 867 N.E.2d 300 (Mass. 2007), where the court distinguished donors with specific interests from more general donors. Moreover, in *Lopez v. Medford Community Center, Inc*., 384 Mass. 163 (1981), the court recognized the standing of plaintiffs denied membership in a public charity.

Plaintiffs are not challenging the way Harvard manages its donations. Rather, Plaintiffs allege that Harvard breached an implied contract that was formed when Plaintiffs donated to Harvard and relied on the representations made by Harvard that it would enforce its diversity, equity, and inclusion policies and Gift Policy. Furthermore, Plaintiffs allege that Harvard's misrepresentation of its diversity, equity, and inclusion policies and Gift Policy directly affected their decision to donate and that they have suffered emotional distress as a result due to their Jewish identity. Plaintiffs' direct and personal impact claims of contract and fraud,

along with being Jewish, align with the special standing doctrine criteria outlined in *Weaver* and *Maffei*.

Furthermore, Plaintiffs' allegations of breach of contract and fraud fall outside the typical scope of the Attorney General's authority and exclusive enforcement powers.

### III.    Plaintiffs' Breach of Contract Claim

#### A.    The Amended Complaint Alleges Sufficient Facts to Support a Contract

Massachusetts courts have recognized that the terms of an implied contract between the Plaintiffs and Harvard asserted here can be formed by statements in handbooks, policy manuals, brochures, catalogs, advertisements, and other promotional materials. *Guckenberger v. Boston Univ.,* 957 F. Supp. 306 (D. Mass. 1997). Furthermore, Massachusetts recognizes that the terms of education contracts specifically may be implied in fact. In *Durbeck v. Suffolk Univ.*, 547 F. Supp. 3d 133 (D. Mass. 2021), it was explained that an implied-in-fact contract could derive from the representations made by the university viewed in conjunction with the plaintiffs' payment of fees and tuition. This connection was crucial in determining that the representations were not too vague or generalized to form an implied-in-fact contract. Here, the combination of Harvard's representations in its diversity policies and Plaintiffs' payments of premium Ivy League tuition, while foregoing attendance at less expensive institutions, and Harvard's acceptance of those payments, coupled with the expectation by Plaintiffs of a valuable degree from an institution of inclusivity and excellence, establish the conduct and relations necessary to form an implied contract.

Defendants argue that the relationship between Harvard and its alumni is not contractual in nature. However, this argument overlooks that the contractual relationship was established during Plaintiffs' time as students, and the obligations arising from that relationship did not terminate upon graduation. In *Walker v. President & Fellows of Harvard College*, 840 F.3d 57 (1st Cir. 2016), the court applied a reasonable expectation standard, asking what

meaning the university should reasonably expect the student to give to the contractual terms based on the university's representations. *See also In re Bos. Univ. Covid-19 Refund Litig.,* 2022 U.S. Dist. LEXIS 140296 (D. Mass. 2022) (examining whether university met student's reasonable expectations); *Czerwienski v. Harvard Univ.,* 666 F. Supp. 3d 49 (D. Mass 2023) where the court found plaintiffs plausibly alleged Harvard breached students' reasonable expectations based on university's written policies in context of Title IX claims and complaints of sexual harassment.) This standard should extend to Harvard alumni ***while they were students***, their having paid the expensive premium Ivy League tuition to attend Harvard based upon its reputation of excellence glorified in brochures and advertisements, based upon its inclusivity and tolerance extolled in handbooks and policy manuals, and based upon diversity and inclusion policies in effect when Plaintiffs enrolled in Harvard. Based on all these representations by Harvard, Plaintiffs could reasonably expect that the Harvard administration would not turn a blind eye and take no action as Harvard morphed into a bastion of antisemitism, and that the value of their Harvard degrees would be maintained following graduation and would not be diminished as a consequence of unchecked antisemitism on campus. The fact that Plaintiffs are now alumni does not negate the existence of the contractual obligations that Harvard undertook during Plaintiffs' enrollment.

Defendants cite several cases in which courts have refused to recognize breach-of-contract claims by alumni against their alma maters. In *Young v. Boston University*, 834 N.E.2d 760 (Mass. App. Ct. 2005) the court found that a brochure describing various alumni benefits did not constitute a contract between the university and its alumni. The present case between Plaintiffs and Harvard is distinguishable because it is not a question of a contract arising from the university/alumni relationship. Rather, the contract between Harvard and Plaintiffs was established when Plaintiffs were students, and the contractual obligations survived when they became alumni. In *Shaw Alumni and Friends, Inc. v. Bell*, 2016 U.S. Dist. LEXIS 70666

(E.D.N.C. 2016), a case arising under North Carolina law decided by a North Carolina court, and therefore not binding on this Court, the court found plaintiffs had not plausibly alleged a contract with the university to protect the value of their degrees. However, *Shaw* concerned mismanagement of finances and did not address the specific issue of a university turning a blind eye to burgeoning campus antisemitism diminishing the value of the degrees, contrary to the reasonable expectations of the alumni when they were students based upon the university's representations.

### B.   *Definiteness of Contract Terms*

Massachusetts courts have recognized that the terms of an implied contract can be based on promises made in various forms of communication, including websites, policy directives, handbooks, brochures and manuals, *In re Shields Health Care Grp., Inc. Data Breach Litig.,* 2024 U.S. Dist. LEXIS 38082 (D. Mass. 2024). Likewise, Massachusetts courts rely on the same communications to solidify promises when resolving claims of vagueness, *id.* Plaintiffs' Amended Complaint cites multiple statements from diversity and inclusion policy directives, Harvard's Gift Policy, and the Alumni Association website that collectively form the basis of the implied contract. Furthermore, when Plaintiffs enrolled at Harvard, its then existing diversity and inclusion policies and programming formed the basis of an implied contract.

Harvard's Gift Policy states "The University honors the aspirations and hopes of those who sought—and seek—to preserve its excellence." The Harvard Alumni Association website describes the relationship between Harvard and its graduates as "a lifelong journey with countless avenues to explore" and promises that "Harvard is here for you during every stage in your career." Furthermore, Harvard's diversity statements and policies when Plaintiffs enrolled in Harvard and over the years emphasized equity and inclusion. These statements are not merely aspirational as Defendants claim; rather, they are specific promises to Plaintiffs that Harvard would be an inclusive, not antisemitic, institution, maintain a certain standard of

excellence, and support its alumni throughout their careers. There is certainly no asterisk in Harvard's brochures saying "Warning: Diversity policy is aspirational and may not actually be real." Moreover, whether these statements constitute clear and unambiguous promises that the Plaintiffs reasonably relied on are factual issues that should be resolved at trial. *Soltys v. Wellesley Country Club,* 15 Mass. L. Rep. 650 (2002).

Defendants rely on cases such as *Squeri v. Mount Ida College and G. v. Fay School,* 2019 U.S. Dist. LEXIS 88273 (D. Mass. 2019) to argue that the alleged contractual terms are too indefinite to be enforceable. *Squeri* found the allegations did not plausibly allege a breach of implied contract because the plaintiffs did not allege specific terms but made bare allegations that did not suffice for a breach of contract claim. Here, by contrast, Plaintiffs have provided specific statements from Harvard's own materials that outline the nature of the promises made. Moreover, Massachusetts courts have upheld implied contracts based on similar statements. For example, in *Doe v. Wentworth Institute of Technology*, 2022 U.S. Dist. LEXIS 99326 (D. Mass. 2022), the court found that the plaintiff had sufficiently alleged the contract terms based on the college's written policies.

## C.    *Adequate Consideration*

For a contract to be enforceable, it must be supported by consideration. Consideration is a bargained-for exchange in which there is a legal detriment of the promisee or a corresponding benefit to the promisor. Plaintiffs' made tuition payments to Harvard at an expensive premium in exchange for a valuable degree from an institution promising to foster excellence and diversity and inclusion. This, constitutes a bargained-for exchange. The expensive Ivy League tuition payments represent a legal detriment to Plaintiffs and a corresponding benefit to Harvard. Furthermore, Plaintiffs' having foregone attendance at other less costly universities (some of which offered scholarships) that have not permitted and are

not permitting antisemitism to thrive on their campuses represents an additional legal detriment to Plaintiffs.

Defendants argue that past consideration is insufficient to support the newly alleged implied contract, citing *Greater Boston Cable Corp. v. White Mountain Cable Construction Corp.*, 414 Mass. 76, 80 (1992). However, the consideration in question in Plaintiffs' case is not past consideration for a claimed new obligation, like in *Greater Boston*. Rather, it was payments in the past by students that were made in exchange for an ongoing obligation by Harvard. Plaintiffs paid a premium to attend Harvard with the reasonable expectation that Harvard would not undermine the value of their degrees. This obligation was not limited to the time of payment but includes ongoing obligations of Harvard to maintain the value and reputation of Plaintiffs' degrees.

Defendants rely on *Annabi v. New York University*, 2023 WL 6393422 (S.D.N.Y. 2023), a case arising under New York law decided by a New York court, and therefore not binding on this Court, where the court rejected a similar implied contract claim due to lack of consideration. *Annabi's* facts are distinguishable because the plaintiff's claim was based on website statements made long after graduation. In contrast, Plaintiffs allege that the implied contract was formed contemporaneously with their enrollment based on Harvard's long-declared inclusive statements that it will enforce its diversity policies to retain its reputation of excellence.

### D.    Plaintiffs' Donation-Based Breach of Contract Claim is Valid

Plaintiffs donated to Harvard with the expectation that the use of the funds would align with Harvard's stated policies, including diversity and inclusion, and its Gift Policy. They allege that Harvard used the donations to foster antisemitism, contrary to its stated policies, breaching its implied contract. As Jewish donors, Plaintiffs would not have donated to an antisemitic organization.

Defendants argue the donation contract claim falls under the exclusive authority of the Attorney General under Mass. Gen. Laws Ch. 12, § 8. However, there is an exception for private plaintiffs with interests distinct from the general public. Plaintiffs' status as Jewish donors and their specific breach of contract allegations are such a special interest.

Defendants contend the implied contract terms via the donation claim are too vague to be enforceable. As discussed previously, Massachusetts courts have recognized implied contract terms can be based on promises made through various communications, including websites, policy directives, and brochures, *In re Shields Health Care Grp., Inc. Data Breach Litig., supra*, 2024 U.S. Dist. LEXIS 38082. The Gift Policy terms, which promote academic freedom and respect for individuals' rights, differences and dignity, along with diversity, equity, and inclusion policies, provide enough specificity for an enforceable contract. Based upon these policies, Plaintiffs, as donors, could reasonably expect their donations would not be used to promote antisemitism. Harvard's actions, in direct violation of these terms, are sufficient to state a breach of contract claim.

## IV.    Plaintiffs' Claim for Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs allege that Defendants breached the implied covenant of good faith and fair dealing attending their contract performance. A breach occurs when one party violates the other's reasonable expectations, interfering with their ability to enjoy the fruits of the contract. *Pellegrini v. Northeastern Univ.,* 2016 Mass. Super. LEXIS 237 (2016).

Plaintiffs allege Harvard devalued their degrees and used donations to promote antisemitism, breaching the implied covenant of good faith and fair dealing. The essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain. *Shaulis v. Nordstrom Inc.,* 120 F. Supp. 3d 40 (D. Mass. 2015). Plaintiffs reasonably expected Harvard

would enforce its rules rather than turn a blind eye to antisemitic conduct, let alone engage in it or allow donation money to be used to promote it, as these actions and inactions would injure their right to receive the benefits of their implied contractual relationship with Harvard.

Defendants argue that the implied covenant of good faith and fair dealing cannot create new rights or duties not in the contract. Plaintiffs are not seeking to create new rights or duties; they assert Harvard's actions and inactions reflect a lack of good faith in meeting their reasonable expectations and benefits implied in their contract.

## V.        Plaintiffs' Fraud and Misrepresentation Claim

Fed. R. Civ. P. 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 8(d)(1) mandates that each averment be simple, concise, and direct. Under Massachusetts law, a claim for common law fraud requires the plaintiff to show that the defendant (1) made a false representation of material fact, (2) knew it was false, (3) for the purpose of inducing the plaintiff to act on this representation, (4) which the plaintiffs justifiably relied on to their detriment. *Willis v. Ocwen Fin. Corp.,* 2022 U.S. Dist. LEXIS 98435 (D. Mass. 2022)

Plaintiffs have adequately pleaded these elements:

1.        **False Representation of Material Fact**: Harvard misrepresented its inclusion policies over the years as being inclusive of all groups, including Jews. Yet Harvard's conduct in the past year has demonstrated that Harvard's policy statements were false.

2.        **Knowledge of Falsity**: Harvard knew its statements were false. While it is hard to know what is in an institution's head, its behavior when the actual issue arose demonstrates the falsity of its earlier representations, as shown by its deliberate indifference to antisemitism festering on campus for several years and failure to remediate. "The play's the thing / Wherein I'll catch the conscience of the king." William Shakespeare, Hamlet, act 2, sc. na

**3.** **Intent to Induce**: These misrepresentations were made to induce Plaintiffs to attend Harvard and donate to Harvard.

**4.** **Justifiable Reliance**: Plaintiffs reasonably relied on these misrepresentations.

**5.** **Detriment**: Plaintiffs suffered financial harm and emotional distress as a result of paying the expensive Ivy League tuition and foregoing less expensive tuition at other institutions. Likewise, Plaintiffs were induced to make donations to Harvard that they would never have made had they know the truth.

Rule 9(b) requires that fraud be stated with particularity. Plaintiffs have met this standard by specifying the time, place, and content of the alleged misrepresentations. The Amended Complaint details the misrepresentations, contrasting Defendants' diversity, equity, and inclusion policies over the years with the reality of Harvard's actions and inactions in the face of the antisemitic incidents being tolerated by Defendants. The Amended Compliant details how Harvard's policies claimed to include all students but excluded Jewish students and how Harvard's Gift Policy falsely claimed to respect all students' dignity while the school failed to address antisemitism in its midst. These allegations are specific and detailed.

Plaintiffs have also provided facts to support their reasonable belief that Harvard knew its statements were false. They allege that Harvard's policies systematically excluded Jewish students and that reports of systemic antisemitism placed Harvard on notice. *See* Am. Compl. ¶¶ 54-58. Harvard's deliberate indifference to antisemitic incidents for years (*See* Am. Compl. ¶¶ 59-68) and especially after the October 7 Attacks (*See* Am. Compl. ¶¶ 69-87), even after being notified by Jewish students, supports the inference that Harvard knowingly misrepresented its policies. This satisfies the requirement that the complaint set forth specific facts making it reasonable to believe that Defendants knew a statement was materially false, *In re Boston Tech. Sec. Litig.,* 8 F. Supp. 2d 43 (D. Mass. 1998).

Defendants argue that Plaintiffs have failed to specify the Massachusetts General Business Law allegedly violated. Common law claims for deceit or fraudulent misrepresentation can form the basis of a claim under Mass. Gen. Laws ch. 93A, *Rick v. Profit Mgmt. Assocs.,* 241 F. Supp. 3d 215 (D. Mass. 2017). This broadly covers unfair and deceptive acts in trade or commerce and encompasses misrepresentations that violate principles of equity and inclusion. Plaintiffs' allegations are thus sufficient to state a claim under this law.

## VI.    Plaintiffs' Unjust Enrichment Claim

To state a claim for unjust enrichment, a plaintiff must prove (1) a benefit conferred on the defendant by the plaintiff, (2) the defendant's appreciation or knowledge of the benefit, and (3) the defendant's acceptance or retention of the benefit under circumstances making it inequitable.

Plaintiffs have alleged they conferred a benefit on Harvard by paying premium Ivy League tuition and donating to Harvard. The fact that Plaintiffs were graduated from Harvard between 1973 and 1996 does not negate this. Harvard retained and benefited from charging premium tuition and relied on alumni donations. Plaintiffs suffered losses equivalent to the tuition and donations made to Harvard.

The retention of these benefits by Harvard is inequitable. Plaintiffs had a reasonable expectation that their donations and premium tuition payments would not support an institution with antisemitic practices. Unaware of the festering antisemitism at Harvard at the time of their tuition payments and donations, Plaintiffs would not have paid premium tuition or donated if they had known of the festering antisemitism or that Harvard would one day be permitted by Harvard administration to become a bastion of overt antisemitism. Retaining the premium tuition is inequitable, as Harvard is not a premier institution, and retaining the donations contradicts Plaintiffs' values and is a betrayal of their trust.

Defendants' argument that only the Attorney General can allege misuse of charitable assets does not preclude Plaintiffs' claim for unjust enrichment. As previously discussed, there is an exception for private plaintiffs with interests distinct from the general public. Plaintiffs, who are Jewish, are not alleging misuse of charitable assets but are asserting a private claim that Harvard's retention of their tuition payments and donations in this context is unjust and inequitable.

## VII.    Plaintiffs' Breach of Fiduciary Duty Claim

A fiduciary relationship exists when one person has a duty to act for or give advice for another's benefit upon matters within the scope of the relationship. Restatement (Second) of Torts § 874 comment a (1979). The existence of a fiduciary relationship is determined by case-specific facts, *Korper v. Weinstein,* 783 N.E.2d 877 (Mass. App. Ct. 2003), and the circumstances can vary widely. *Merrimack Health Grp., Inc. v. Heroux,* 2016 Mass. App. Div. 31 (2016).

Plaintiffs, as donors, have a fiduciary relationship with Harvard University. For example, Harvard's Faculty of Medicine handbook states "The Corporation exercises fiduciary responsibility regarding to [sic] the University's academic, financial, and physical resources and overall well-being." https://facultyhandbook.hms.harvard.edu/2bylaws-gov/hvrd-univ-gov/ (last visited 8/11/24). Furthermore, Plaintiffs, as Jewish donors, trusted Harvard to use their donations consistently with its stated policies, mission statements, and values. This trust imposes a fiduciary duty on Harvard to act in Plaintiffs' best interests. By supporting antisemitism with Plaintiffs' donations, Harvard has acted contrary to the best interests of its Jewish donors and to the "overall well-being" of the university, thereby breaching its fiduciary duty.

Defendants argue no Massachusetts court has recognized a fiduciary duty between a university and its alumni or donors. However, the lack of a specific ruling does not preclude

such a duty. "[T]he circumstances which may create a fiduciary relationship are so varied that it would be unwise to attempt the formulation of any comprehensive definition that could be uniformly applied in every case." *Warsofsky v. Sherman,* 326 Mass. 290, 292 (1950)

Defendants cite *Lopez v. Medford Community Center, Inc.,* 424 N.E.2d 229 (Mass. 1981), *Harvard Prison Divestment Campaign v. President and Fellows of Harvard Coll*, 2081CV00510 (Mass. Super. Ct. January 7, 2021) (unpublished), and *Brzica v. Trustees of Dartmouth College,* 791 A.2d 990, 994 (N.H. 2002), to argue no fiduciary duty exists between a university and its alumni or donors. These cases are distinguishable. *Lopez* addressed the Attorney General's role in correcting public charity abuses, not university-donor fiduciary relationship. *Harvard Prison Divestment Campaign* was dismissed for lack of standing and did not address fiduciary duty. *Brzica* is a New Hampshire case and does not bind Massachusetts courts. Thus, these cases do not negate Plaintiffs' argument that such a duty exists under the broader principles of fiduciary relationships recognized in Massachusetts.

## IX.    Statute of Limitations

Defendants' assertion that the statute of limitations has expired for both the breach of contract and fraud claims is incorrect. Under Mass. Gen. Laws ch. 260, § 2, the statute of limitations for contract actions is six years. Harvard breached and continues to breach its contractual obligations by failing to address antisemitism on campus, most recently following October 7, 2023 when the devaluation of Plaintiffs' degrees actually happened. Plaintiffs filed the contract claim within six years of the breach.

The fraud claim has a three-year statute of limitations under Mass. Gen. Laws ch. 260, § 2A 260. The discovery rule tolls this period until a plaintiff discovers, or reasonably should have discovered, the harm caused by a defendant. Plaintiffs could not have known of the festering antisemitism at Harvard until after the October 7 attacks, when antisemitism at Harvard became overt and was publicly acknowledged by then-President Gay before Congress.

Prior incidents of antisemitism and their severity and Harvard's ambivalence were suppressed, preventing Plaintiffs from reasonably discovering the extent of Harvard's misfeasance.

Additionally, the continuing violation doctrine allows for the tolling of the statute of limitations when the defendant's conduct is ongoing. This doctrine allows for recovery of earlier conduct if a later, timely filed charge arises from or is related to an earlier act. *Everett v. 357 Corp.,* 453 Mass. 585 (2009) (holding continuing violation doctrine permits recovery for discrimination occurring outside statute of limitations if events are part of an ongoing pattern of discrimination and there is a discrete violation within the limitations period.); *see Pelletier v. Town of Somerset,* 458 Mass. 504 (Mass. 2010).

Harvard's antisemitic conduct has been continuous, but its extent and the resulting damages only became clear after the October 7 attacks. The heightened antisemitism at Harvard following these attacks constitutes violations within the limitation period.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request this court enter an order denying Defendants' motion to dismiss and permitting Plaintiffs to proceed with their claims.

Dated:   Brooklyn, New York
         August 12, 2024

                                 Yours,

                                 THE BERKMAN LAW OFFICE, LLC
                                 *Attorneys for Plaintiffs*

                                 by:     /s/ Robert J. Tolchin
                                          Robert J. Tolchin

                                 829 East 15th Street, Box 7
                                 Brooklyn, New York 11230
                                 718-855-3627

Of Counsel:

NITSANA DARSHAN-LEITNER & CO.
Nitsana Darshan-Leitner
*Israeli Attorney for Plaintiffs*
10 Hata'as Street, Ramat Gan, 52512 Israel
Israeli #: 011-972-523-837-020
U.S. #: (212) 591-0073

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this Motion filed through the ECF system is expected to be sent electronically to the registered participants as identified on the court's docket.

/s/Robert J. Tolchin
Robert J. Tolchin