UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALAN JOSEPH BAUER; DOUGLAS S. RABIN; VIVIAN STEIR RABIN; RODDY TEEPLE; ANDREW NEFF; NANCY NEFF; RICHARD SANDERS POLIN; TAMMIE PUROW; MIMI JANKOVITS; and DAVID GENET,

Plaintiffs,

v.

PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION) and THE HONORABLE AND REVEREND THE BOARD OF OVERSEERS,[1]

Defendants.

Civil Action No. 1:24-cv-10404-GAO

LEAVE TO FILE GRANTED
August 29, 2024

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

As expressed in its opening brief in support of its Motion to Dismiss Plaintiffs' Amended Complaint, Harvard stands squarely against antisemitism and vigorously disputes Plaintiffs' allegations that it turned a "blind eye" to discrimination and harassment. Even accepting those allegations as true, though—as the Court must at this stage of the proceedings—all of Plaintiffs' claims fail as a matter of law.

In their Opposition, Plaintiffs attempt to leverage their alleged statuses as alumni and donors into expansive legal authority to challenge Harvard's administrative decisions and policies, as well as use of its charitable assets. Specifically, they seek to insert themselves into Harvard's ongoing and evolving response to the challenging circumstances that have arisen on campuses across the country in the wake of the horrific events of October 7, 2023. They ask this Court to override Harvard's decision-making process and, instead, to implement Plaintiffs'

---

[1] The Board of Overseers is not a proper defendant in this action, because it is not a corporate entity independent of President and Fellows of Harvard College.

preferred policy measures by ordering Harvard to (1) "take disciplinary measures, including the termination of administrators, professors, faculty, and other employees responsible for antisemitic propaganda, discrimination, and harassment, whether because they engage in it or permit it," and (2) to take "disciplinary measures, including suspension or expulsion, of students who engage or have engaged in antisemitic conduct." Am. Compl., Request for Relief (Doc No. 23).

Plaintiffs offer no support, however, for the broad legal rights they seek to assert in this case. Instead, they rely on generalizations and mischaracterizations of case law that cannot substitute for legal authority and reasoned argument. Because Plaintiffs have failed to demonstrate that they have standing to assert any of their claims and because their allegations fail to state a cognizable claim for relief, this Court should dismiss the Amended Complaint for all the reasons discussed in Harvard's Memorandum in support of its Motion to Dismiss, as well as those in this Reply.

## ARGUMENT

### I. Plaintiffs Lack Standing to Pursue the Claims in the Amended Complaint.

#### A. *Plaintiffs' Alleged Alumni Status Does Not Confer Standing.*

As Harvard has previously explained, federal and state courts across the country have consistently refused to grant university alumni standing to challenge the administrative decisions and policies of their alma maters. *See e.g.*, *Leach v. Nichol*, 2007 WL 1574409, at *3 (E.D. Va. May 29, 2007), *aff'd*, 256 F. App'x 612 (4th Cir. 2007); *Mercer Univ. v. Smith*, 371 S.E.2d 858, 861 (Ga. 1988), *abrogated on other grounds by Warren v. Bd. of Regents*, 527 S.E.2d 563 (Ga. 2000); *see also Tishok v. Dep't. of Educ.*, 113 A.2d 118, 123 (Pa. Commw. Ct. 2016); *Russell v. Yale Univ.*, 737 A.2d 941, 944–46 (Conn. App. 1999); *Comm. to Save Polytechnic Univ. v. Bd. of Trustees of Polytechnic Univ.* 2009 WL 222097, at *5 (N.Y. Sup. Ct. Jan. 30, 2009); *Steeneck v.*

*Univ. of Bridgeport*, 1994 WL 463629, at *7 (Conn. Super. Ct. Aug. 18, 1994), *aff'd*, 668 A.2d 688 (Conn. 1995); *accord Brown v. Texas A&M Univ. Sch. of Law*, 2016 WL 206465, at *3 (N.D. Tex. Jan. 14, 2016); *Ad Hoc Comm. of Baruch Black & Hisp. Alumni Ass'n v. Bernard M. Baruch Coll.*, 726 F. Supp. 522, 523 (S.D.N.Y. 1989). In an attempt to rebut the weight of this extensive authority, Plaintiffs point simply to the fact that these cases are "from other jurisdictions and therefore not binding on this Court." Pls' Opp. at 5 (Doc No. 30). But tellingly, Plaintiffs do not cite to a single case in which a court in *any* jurisdiction has concluded that alumni have standing to challenge their alma maters' operational decisions in the manner that they propose.

That is because such standing does not exist. Plaintiffs admittedly graduated from Harvard decades ago. *See* Am. Compl. ¶¶ 23–32. They do not currently attend Harvard. They are not employed by Harvard. In short, the time since they were directly affected by Harvard's operational decisions has long passed.

Nor are Plaintiffs' efforts to distinguish the cases cited by Harvard persuasive. For example, Plaintiffs state—correctly—that in *Steeneck v. University of Bridgeport*, 235 Conn. 572, "the alumni lacked standing to challenge the university's loan agreement due to the absence of a direct, personal, and legal interest." Pls' Opp. at 6. They then assert, with absolutely no legal support, that this case is different simply because Plaintiffs *do* have a "direct, personal, and legal interest." *Id.* But of course saying something does not make it true. Just as in *Steeneck*, Plaintiffs in this case "have already received their degrees, and the injuries they have allegedly suffered due to [the university's] alleged loss of academic reputation fall within the 'impermissible realm of general speculation about unproven hypothetical situations.'" *Steeneck*, 1994 WL 463629, at *6 (quoting *Maloney v. Pac*, 439 A.2d 349, 354 (Conn. 1981)). And just like the alumni-plaintiffs

3

in the many cases cited by Harvard, Plaintiffs are not directly affected by Harvard's current operational decisions. Their claims of injury must accordingly be dismissed for lack of standing.

    B.    *Plaintiffs' Alleged Donor Status Does Not Confer Standing.*

Plaintiffs similarly fail to marshal any support for their assertion that their alleged status as prior donors is sufficient to establish standing for them to proceed in this case. As Harvard has argued—and as Plaintiffs appear to agree—only the Massachusetts Attorney General has standing to challenge the misuse of charitable assets in the Commonwealth, absent a showing of "special standing." *See* Pls' Opp. at 7; *see also Maffei v. Roman Cath. Archbishop of Boston*, 449 Mass. 235, 245 (2007). But Plaintiffs make little effort to explain whether or how they have demonstrated such "special standing," other than to suggest that their Jewish identity is somehow sufficient. *See id.* at 7–8, 12–13. Instead, Plaintiffs pivot to a different argument that they are "not challenging the way Harvard manages its donations" but rather are alleging breach of contract and misrepresentation. In doing so, Plaintiffs fail to grapple with—or even mention—the Superior Court's decision in *Harvard Prison Divestment Campaign v. President and Fellows of Harvard Coll*, 2081CV00510, at *7 (Mass. Super. Ct. Jan. 7, 2021), which rejected similar claims brought against Harvard by alleged donors for the precise reason that allowing such claims "would render meaningless the exclusive standing of the Attorney General to enforce due application of charitable funds and also would obligate Harvard to follow the unexpressed intent of all donors, which is an unworkable principle." So too here. Because Plaintiffs' alleged status as donors does not permit them to challenge the way in which Harvard manages or uses its money, their claims must be dismissed.

**II.**    **Plaintiffs' Contract-Based Claims Must Be Dismissed.**

Plaintiffs also fail to rebut Harvard's arguments that their breach-of-contract claim fails as a matter of law.

4

*First*, in arguing that the Amended Complaint supports the existence of a contract with Harvard, Plaintiffs rely on cases that recognized an implied contractual relationship between an educational institution and *its current students*. *See* Pls' Opp. at 8 (citing *Guckenberger v. Boston Univ.*, 957 F. Supp. 306 (D. Mass. 1997) and *Durbeck v. Suffolk Univ.*, 547 F. Supp. 3d 133 (D. Mass. 2021)). They then contend—again without citation to any legal authority—that "the contractual relationship [that] was established during Plaintiffs' time as students, and the obligations arising from that relationship did not terminate upon graduation." *Id.* But there is no support for that proposition in Massachusetts (or, for that matter, anywhere else). To the contrary, courts have explained that while the relationship between a university and its students may, at times, be "contractual in nature," the "relationship between [a university] and its *former* students" necessarily presents a "more attenuated situation." *Jenkins v. Howard Univ.*, 2023 WL 3948815, at *5 (D.D.C. Jun. 12, 2023) (original emphasis) (quotations and citations omitted). And because of that attenuation, courts have regularly rejected similar contractual-type claims based on the relationship between educational institutions and their alumni. *See, e.g.*, *Young v. Boston Univ.*, 64 Mass. App. Ct. 586, 589 (2005); *see also, e.g.*, *Annabi v. New York Univ.*, 2023 WL 6393422, at *9 (S.D.N.Y. Sept. 29, 2023); *Shaw Alumni and Friends, Inc. v. Bell*, 2016 WL 3080792, at *3 (E.D.N.C. May 31, 2016); *Cheves v. Trustees of Columbia Univ.*, 89 A.D.3d 463, 464 (N.Y. App. Div. 2011). Where Plaintiffs have supplied no support for the proposition that a student-university contract outlasts a student's graduation, and where courts in Massachusetts and beyond have refused to recognize claims by alumni seeking to assert ill-defined breach-of-contract claims against their alma maters, Plaintiffs have not shown that any contract exists between them and Harvard.

*Second*, Plaintiffs' arguments regarding the alleged terms of their implied contract with Harvard support, rather than rebut, Harvard's contention that such terms are too indefinite to be

5

enforceable. For a contract to be enforceable under Massachusetts law, "[a]ll the essential terms of the contract must be sufficiently definite and certain so that the intention of the parties may be discovered, the nature and extent of their obligations ascertained, and their rights determined." *Moore v. La-z-Boy, Inc.*, 639 F. Supp. 2d 136, 139 (D. Mass. 2009) (quoting *Cygan v. Megathlin*, 326 Mass. 732, 733–34 (1951)). "Vague and generalized representations" and "aspirational statements . . . are insufficiently definite to form a contract." *G. v. Fay School*, 931 F.3d 1, 12 (1st Cir. 2019). Yet Plaintiffs double down on the vague and indefinite nature of the promises they seek to enforce in this case. For example, they point to the following communications to "solidify" Harvard's alleged promises:

- "The University honors the aspirations and hopes of those who sought—and seek—to preserve its excellence";
- Harvard is "a lifelong journey with countless avenues to explore"; and
- "Harvard is here for you during every stage in your career." Pls' Opp. at 10.

Plaintiffs contend that these communications—in addition to certain "diversity statements and policies" from "over the years" that they notably do not identify, date, or quote—"are not merely aspirational" but rather "are specific promises to Plaintiffs that Harvard would be an inclusive, not antisemitic, institution, maintain a certain standard of excellence, and support its alumni throughout their careers." *Id.* at 10–11. But there is no enforceable standard by which this Court could adjudicate whether Harvard has "honor[ed] the aspirations and hopes of those sought—and seek—to preserve its excellence." Nor can there be: reasonable minds can—and will—differ about what this alleged promise requires Harvard to do. Nor is there any way for this Court to assess whether Harvard has lived up to an alleged promise to provide a "lifelong journey" or to be "here" for its alumni. Far from bolstering Plaintiffs' position, these statements reinforce Harvard's position that Plaintiffs have not alleged an enforceable promise in this case.

In fact, the lone case that Plaintiffs point to in support of enforceability actually highlights the deficiencies of their claim. In *Doe v. Wentworth Institute of Technology*, 2022 WL 1912883, at *6 (D. Mass. June 3, 2022), the plaintiff—a current university student—alleged that the university had breached its contractual obligations under its student code of conduct and sexual misconduct policy. Specifically, she alleged that for students who made complaints of sexual discrimination or sexual assault, the university's policies afforded among other things, the rights to "a prompt and impartial investigation," to "an objective evaluation of all relevant evidence," to use of a preponderance of the evidence standard in reaching a determination, and to exclusion of "improper information," such as the complainant's sexual history, in the investigative record and in the determination. She then "made specific allegations regarding how [the university] breached those terms." *Id.* The student's allegations were not, as Plaintiffs suggest, *see* Pls' Opp. at 11, in any way "similar" to those that Plaintiffs' make in their Amended Complaint. Rather, the student in that case pointed to precise, definable promises—such as a promise to use a preponderance of the evidence standard—that she alleged the university had breached. *Id.*

Plaintiffs' allegations here are of precisely the opposite sort. They are neither specific nor concrete. Rather, they teem with open-ended, indeterminate language that affords neither Harvard nor the Court any idea of how Harvard could comply or fail to comply with, for example, providing "a lifelong journey" to its alumni. The phrases on which Plaintiffs rely have no clear or empirical meaning and would allow them—or any other Harvard alumni—to apply purely subjective assessments to whether Harvard may have breached an alleged contract with its alumni. Such allegations are unenforceable as a matter of law. *See Fay School*, 931 F.3d at 12; *see also Wu v. Ma,* 2023 WL 6318831, at *1 (D. Mass. Sept. 28, 2023); *Brown v. Suffolk Univ.*, 2021 WL 2785047, at *6 (D. Mass. Mar. 31, 2021); *Shin v. Mass. Inst. of Tech.*, 2005 WL

1869101, at *7 (Mass. Super. Ct. Jun. 27, 2005). Plaintiffs' breach-of-contract claim must therefore be dismissed.

*Third*, Plaintiffs fail to allege adequate consideration to support their contract claims. "Past consideration"—here, the tuition payments that Plaintiffs allegedly made between the late 1960s and the mid-1990s—"does not support a contract." *Greater Bos. Cable Corp. v. White Mountain Cable Const. Corp.*, 414 Mass. 76, 80 (1992). To get around this basic tenet of contract law, Plaintiffs repeat their argument that an alleged implied student-university contract they had with Harvard during their enrollment survived their graduation and now requires Harvard to "enforce its diversity policies to retain its reputation of excellence" in perpetuity. Pls' Opp. at 12. As discussed above, there is no legal authority for that proposition. It also defies common sense: if Plaintiffs' theory is correct, universities would never be able to modify any of their policies, as such changes might breach student-university contracts with alumni who attended Harvard when a prior policy was in place. That is why courts have explained that "in the absence of any other factors, it is apparent that, upon graduation, one may no longer look to one's alma mater for other than such things as a transcript of grades as needed." *Ad Hoc Comm.*, 726 F. Supp. at 523.

Plaintiffs also argue that their case is distinguishable from *Annabi v. New York University*, 2023 WL 6393422, in which a district court dismissed similar post-graduation contract claims, because in that case, "the plaintiff's claim was based on website statements made long after graduation." Pls' Opp. at 12. As Plaintiffs' Amended Complaint and Opposition make clear, though, their contract claim is equally reliant on such statements. *See id.* at 10–11 (citing Harvard Alumni Association website, Harvard's diversity statements and policies from "when Plaintiffs enrolled in Harvard and over the years," and an undated Harvard Gift Policy); *see also* Am. Compl. ¶¶ 47, 108 (citing gift policy on Harvard's alumni website), ¶ 101 (citing

8

Harvard Alumni Association website), ¶ 102 (citing "diversity and inclusion" statement on Harvard's website).

*Finally*, Plaintiffs have not demonstrated that they have an implied contractual relationship with Harvard based on donations that they allegedly made to Harvard. For more than 100 years, the Supreme Judicial Court of Massachusetts has recognized that the Attorney General's duty to prevent the misuse or mismanagement of charitable funds is exclusive. *See Weaver v. Wood*, 425 Mass. 270, 275 (1997); *see also Ames v. Attorney Gen.*, 332 Mass. 246, 250 (1955); *Dillaway v. Burton*, 256 Mass. 568, 573 (1926). Plaintiffs make a blanket assertion that their "status as Jewish donors and their specific breach of contract allegations are . . . a special interest" that excepts them from this statutory scheme. Pls' Opp. at 13. But the special interest exception is a narrow one: special standing exists only where "the claim has arisen from a personal right that directly affects the individual member, such as where the member has a right to vote in connection with some aspect of the charity's affairs . . . and is prohibited from doing so." *Weaver*, 425 Mass. at 276. In determining whether a plaintiff has special standing, Massachusetts courts typically examine whether that plaintiff has been accorded such "personal rights" in the administration of the public charity by either the operation of law, the public charity's articles of organization or by-laws, or a will or trust gifting property to that public charity. *See, e.g.*, *Maffei*, 449 Mass. at 245 (holding that plaintiffs had special standing to litigate a claim that actions of public charity had triggered their equitable reversionary interest in conditionally gifted property). Moreover, the plaintiff seeking shelter in the special standing doctrine must also demonstrate that the challenged action caused an injury to that personal right. *See Lopez v. Medford Community Center, Inc.*, 384 Mass. 163, 168 (1981). This exception has never been extended to "a potential beneficiary of the charity, such as a member of a church, or some other non-trustee, such as a donor, seeking to enforce the trust's charitable purposes or

9

bylaws," each of whom lacks standing to litigate a misuse claim. *In re Bos. Reg'l Med. Ctr., Inc.*, 328 F. Supp. 2d 130, 146 & n.5 (D. Mass. 2004) (applying Massachusetts law, collecting cases, and holding that the Attorney General has the exclusive standing "to enforce the rights of the beneficiaries of charitable trusts"). In sum, to have special standing to maintain this action, Plaintiffs must demonstrate the existence of a personal right or interest in the management of Harvard's charitable assets and that such personal right has been injured by the manner in which Harvard's charitable assets have been managed. Because Plaintiffs have not done so, they do not have special standing, and their donation-based contract theory fails as a matter of law.

For all of these reasons, as well as those laid out in Harvard's Memorandum in support of its Motion to Dismiss, Plaintiffs' contract claim must be dismissed. In addition, because Plaintiffs have not plausibly pleaded the existence of a contract, their claim for breach of the implied covenant of good faith and fair dealing must also be dismissed. *See Thornton v. Harvard University*, 2 F. Supp.2d 89, 95 (D. Mass. 1998).

### III. Plaintiffs' Fraud and Misrepresentation Claims Must Be Dismissed.

Plaintiffs attempt to explain how they have pleaded fraud with the particularity required by Federal Rule of Civil Procedure 9(b), but their efforts underscore their failure to do so. Rule 9(b) requires Plaintiffs to plead the time, place, and content of any alleged misrepresentation, *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 22 (1st Cir. 2017), as well as "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading," *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 12 (1st Cir. 2009). In their Opposition, Plaintiffs again state only that Harvard's alleged misrepresentations occurred "over the years," Pls' Opp. at 14–15, and gesture in the direction of various Harvard policies regarding equity and diversity. But Plaintiffs do not link any specific statement to any alleged inducement, as they are required to do by Rule 9(b). *See Equip. & Sys.*

10

*For Indus., Inc. v. Northmeadows Const. Co.*, 59 Mass. App. Ct. 931, 931–32 (2003) ("At a minimum, a plaintiff alleging fraud must particularize the identity of the person(s) making the representation, the contents of the misrepresentation, and where and when it took place. In addition, the plaintiff should specify the materiality of the misrepresentation, its reliance thereon, and resulting harm"). For that reason, Plaintiffs' fraud and misrepresentation claims must be dismissed.

Plaintiffs also appear to assert, for the first time in their Opposition, that their fraud and misrepresentation claims are brought under Massachusetts' consumer protection statute, Mass. Gen. Laws ch. 93A. *See* Pls' Opp. at 16. As an initial matter, nothing in the Amended Complaint asserts or attempts to assert a claim under Chapter 93A, *see* Am. Compl., *passim*, let alone that the conduct that is the subject of the Amended Complaint involves the "conduct of trade or commerce" such that it falls within the scope of that statute. Nor have Plaintiffs alleged any of the procedural prerequisites for the assertion of such a claim. *See, e.g.*, Mass. Gen. Laws ch. 93A, § 9(3). Regardless, because such claims are grounded in deception, the same Rule 9(b) particularity requirement applies, and this claim fails for the same reason that Plaintiffs have failed "'to specifically plead the time, place, and content of [the] alleged false representation[s]' underlying the intentional misrepresentation and Chapter 93A claims." *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 462 (D. Mass. 2018) (quoting *Mulder*, 865 F.3d at 22).

### IV. Plaintiffs' Unjust Enrichment Claim Is Invalid.

In support of their unjust enrichment claim, Plaintiffs argue that Harvard's retention of Plaintiffs' alleged tuition payments is inequitable where "Plaintiffs had a reasonable expectation that their . . . premium tuition payments would not support an institution with antisemitic practices." Pls' Opp. at 16. They also make the unsupported assertion that "[t]he fact that Plaintiffs were graduated from Harvard between 1973 and 1996 does not negate" the validity of

11

their claim. *Id.* But as Harvard has argued—and as Plaintiffs have failed to rebut—the theory that, decades after their graduation, they can somehow recoup their tuition based on their later disagreements with Harvard's operational decisions is contrary to the law, *see Brown* 2016 WL 206465, at *3; *Ad Hoc Comm.*, 726 F. Supp. at 523; *Leach*, 2007 WL 1574409, at *3; *In re Milton Hershey Sch.*, 911 A.2d at 1263; *Mercer Univ.*, 371 S.E.2d at 861; *Tishok*, 113 A.2d at 123; *Russell*, 737 A.2d at 944–46; *Comm. to Save Polytechnic*, 2009 WL 222097, at *5; *Steeneck*, 1994 WL 463629, at *7, and would impermissibly interfere with the missions of universities if it were not. Moreover, as discussed above, Plaintiffs' donation-based theory must be dismissed because "only the Attorney General can bring an action alleging the misuse of charitable assets," *Weaver*, 425 Mass. at 275, and Plaintiffs have not shown that they meet the special interest exception.

V. **Plaintiffs' Breach of Fiduciary Duty Claim Must Be Dismissed.**

In contravention of all case law on the topic, Plaintiffs assert (once again without citing a single case) that "Plaintiffs, as donors, have a fiduciary relationship with Harvard University" and that this permits them to sue Harvard. Pls' Opp. at 17. They also attempt to distinguish *Harvard Prison Divestment Campaign v. President and Fellows of Harvard College*—a decision that is squarely on point—by arguing that that case "was dismissed for lack of standing and did not address fiduciary duty." *Id.* at 18. In doing so, Plaintiffs completely miss the mark: in *Harvard Prison Divestment Campaign*, 2081CV00510, at *9, the Superior Court dismissed the fiduciary duty claim brought by alleged donors against Harvard for lack of standing. Of course the court did not address the merits of the fiduciary duty claim: it had no need to do so where it determined that the claim was barred by the threshold standing issue.

So too here. The Court need not reach the merits of Plaintiffs' fiduciary duty claim because Plaintiffs do not have standing to bring it. And if the Court were to reach the merits,

Plaintiffs have provided absolutely no support for their contention that a fiduciary relationship exists between a university and its alumni or donors. Indeed, at least one court to have considered a similar situation determined that no such fiduciary relationship exists. *See Brzica v. Trustees of Dartmouth Coll.*, 791 A.2d 990, 994 (N.H. 2002). Because there is no legal basis for the notion that a university has a fiduciary relationship with its graduates or donors, this claim must be dismissed.

### VI. Plaintiffs' Claims Are Barred by the Applicable Statutes of Limitations.

Finally, Plaintiffs argue that their claims are not barred by the applicable statutes of limitations because it was not until after October 7, 2023, that "the devaluation of Plaintiffs' degrees actually happened." Pls' Opp. at 18. They also claim that they "could not have known of the festering antisemitism at Harvard until after the October 7 attacks." Yet their Amended Complete is replete with allegations that Harvard has known of and tolerated antisemitism on campus for at least the last decade and includes specific allegations of specific conduct occurring as early as 2014 that, if accepted as true, should have put Plaintiffs on notice of their claims. *See, e.g.*, Am. Compl. ¶¶ 50–52, 54–57, 59–60. If Plaintiffs' theory is that Harvard's alleged tolerance of antisemitism caused the alleged devaluation of their degrees, they cannot now pick and choose which instances of alleged antisemitism actually count in order to circumvent the statutes of limitations on their claims.

### CONCLUSION

For the foregoing reasons, as well as those laid out in Harvard's Memorandum in support of its Motion to Dismiss, Harvard respectfully requests that this Court enter an order dismissing Plaintiffs' Amended Complaint with prejudice.

Respectfully submitted,

13

                    PRESIDENT AND FELLOWS OF
                    HARVARD COLLEGE

                    By its attorneys,

                    /s/ *Alexandra Arnold*
                    Alexandra Arnold (BBO #706208)
                    aarnold@clohertysteinberg.com
                    Daniel J. Cloherty (BBO #565772)
                    dcloherty@clohertysteinberg.com
                    Victoria L. Steinberg (BBO #666482)
                    vsteinberg@clohertysteinberg.com
                    CLOHERTY & STEINBERG LLP
                    One Financial Center, Suite 1120
                    Boston, MA 02111
                    617-481-0160

Dated: August 30, 2024

## CERTIFICATE OF SERVICE

      I hereby certify that on August 30, 2024, this document was filed through the ECF system and will be sent electronically to the registered participants, as identified on the Notice of Electronic Filing.

                    /s/ *Alexandra Arnold*
                    Alexandra Arnold